Thank you, Your Honor, and may it please the Court. My name is Glenn Herra. I represent the plaintiff, St. Louis Heart Center. We're here on a final individual judgment in the plaintiff's favor following the, excuse me, following the District Court's denial of, or decertification actually, of a previously certified class, in this case brought under the Telephone Consumer Protection Act for facsimile advertisements. This case presents actually an ideal opportunity for this Court to clarify the law in this circuit on what ascertainability means in a Rule 23b3 class action and, as part of that, where the proper analytical home is for the issue of class member identification. What do you do when there's a problem identifying the persons to whom any The two circuit courts that have really drilled down on that question, on ascertainability, are the Seventh Circuit in Mullins v. Direct Digital, which was the first decision, and the Ninth Circuit in Briseño v. ConAgra, and both of them held that the Rule itself doesn't talk about ascertainability. It's a totally judge-made doctrine. The only place Rule 23 actually mentions identification of class members is in Rule 23c2b, where it dictates that in a 23b3 class, individual notice has to be given to all class members who can be identified through reasonable effort. So the Rule itself contemplates situations where you can't identify class members. So those are the two decisions that really drilled down on it, and those two courts held, to the extent there is an ascertainability requirement or definiteness requirement, it focuses on the class definition. Is it defined by objective criteria? Counsel, before we get there, and I anticipate that you're probably right, we're going to spend a great deal of time talking about ascertainability, but the district court, in this case, in decertifying the class, the order really takes a belt-and-suspenders approach. So in addition to ascertainability, the district court talks about commonality and predominance. And in particular, there seems to be some overlap. In other words, the same issue you're identifying, the district judge cites as being the reason why there's no commonality and predominance. But I wonder whether we have to reach ascertainability, because with respect to predominance, he says, look, we got to have all these mini-trials. And so there really aren't common issues of fact and law that are shared among the class members. That, in fact, the major issue will be figuring out who's in the class and who's not in the class. Why can't we affirm on that ground? Right, I understand. Maybe I should take one step back and just acknowledge the factual problem that led to the district court's commonality ruling, predominance ruling, and ascertainability ruling was that, in this case, we have the target list of fax numbers that the defendants paid West Fax to send the faxes to. We have the invoices from West Fax showing what percentage of those transmissions were successful, which is about 80%. But we do not have the fax transmission logs that we always seek but we do not always get, showing specifically which numbers successfully received the transmission and which numbers did not receive the transmission. So from that, the district court said, well, you can't identify the class members, so ascertainability is not met. And for the same reason, based on the same factual set of facts, there's no commonality and there's no predominance. So I just wanted to get that background out there. To answer your question, that set of, that question of identifying class members has nothing to do with commonality. That is a minimal requirement under 23A2. It's met if there is one question, one single question of fact or law common to the class, such as, are the faxes advertisements? Were they unsolicited? Is the defendant the sender, as defined by the FCC regulations? Is the opt-out notice compliant? There are four main common questions. Are any one of which will independently meet the minimal 23A2 standard. But on predominance, I mean, that's, I think, the tougher one for you. Because if, you may be right that there's common issues of law and fact and there might be several of them. But if, if the district court views the case as requiring 80% of the court's time or 90% of the court's time figuring out who the class members are and holding these mini trials, it seems to me that the district court didn't abuse its discretion in saying there's no, that, that common issues don't predominate. I understand and I think predominance is where the stronger argument for the defendants. But that does presume that identifying the class members, each individual class member with 100% certainty, is a requirement to entering a class-wide judgment. We argue that's not the case. That the court can enter an aggregate judgment because we know the number of violations, there are 35,212. We know the statutory damages is a minimum $500 per violation of the TCPA or the regulations prescribed under the TCPA. So you want a little order of damages for plaintiffs you can't identify? Well, what are you gonna do with the money? We're gonna, we're gonna send claim forms to everybody on the target list, which I admit is over-inclusive. Anybody who wants to file a claim can file a claim saying I received this fax and that this was my fax number on the date in question and I received the fax and I want my claim. So what if only 10% of the people respond? We side-pray the rest of the money to a, you know, to a proper recipient which hasn't really been briefed yet. Those are issues about claims administration. How do we distribute the recovery, the aggregate judgment in aggregate damages and Judge Benton's concurrence in the denial of the petition for rehearing in the Tyson Foods case that went up to the Supreme Court, Bufocao versus Tyson Foods. He talked about aggregate damages for the class and there's, there's a large body of case law, but what do you do with residual funds when you have a class action judgment? The Ninth Circuit dealt with it in the six Mexican workers case that we discussed quite a bit in our briefs. In that case, the district court certified the class of migrant workers who they knew they would never be able to locate, conducted the class trial, entered the class judgment, and then entered orders for the part, for the plaintiffs to try to identify as many of the class members as possible. And the Sixth Circuit did, the Ninth Circuit did reverse in that case or vacate part of the decision because the side-pray recipient that they'd identified, the Ninth Circuit found it wasn't an appropriate side-pray recipient. So, so that is, now the defendants will argue, well, we argue the, the issue of class member identification is an issue of superiority under the rule 23b3 superiority problem, particularly manageability. That's where you deal with issues about giving people notice, identifying them to pay them their money and processing claims, that sort of thing. The defendants argue, and they rightly point out that the same argument was rejected by the Sixth Circuit in Sandusky Wellness Center versus ASD. It's another case I argued. You argued it, but you didn't cite it. In my opening brief, I admit that, and maybe I should have fronted that. Might have been a good idea. I can see that. So what, what's wrong with saying that the class is not in a superior vehicle here? The, the court could say that. The district court never addressed superiority. It didn't get there, so it didn't analyze the question properly. And the reason it makes a difference. Well, why couldn't we analyze it properly and say it's not superior? You can't, you can't, and you can, you can decide that question, and we think you should decide that it is superior, because there's one big difference between this case and ASD. In terms of, first, under superiority, the reason it matters, whether it's a freestanding ascertainability requirement where the plaintiff bears the burden of proof, or if it's rule 23 superiority, is because superiority is a comparative balancing test. You weigh the costs and benefits of class action, of class certification, including the deterrent purpose of the underlying substantive law, the TCPA in this case. Now in ASD, the defendants were sending fax advertisements to their customers. These were people they knew, and people, many of whom gave prior express invitation or permission or consent, to send fax advertisements. And under those circumstances, the Sixth Circuit held, well, even if the district court had reached superiority, we hold it's not superior, because, you know, those, that corporate deterrence consideration doesn't outweigh the management difficulties. The opposite is the case in this case. The defendants in this case, it's undisputed, they bought, they bought lists of fax numbers for doctors in certain practice areas that they wanted to target. They paid a fax broadcaster, Westfax, to send those fax advertisements to those numbers. They never tried to get consent from those people. They had no established business relationship with those people. In fact, they took the purchase lists and scrubbed them to remove their current clients, because they wanted to target only prospective customers. So this is a pure junk fax case, an unadulterated junk fax case, which is exactly what the TCPA was, was passed to prevent and deter. Your Honor, I reserved the balance of my time. Well, I've got one question before you sit down. A moment ago, you touched on, I think you touched on the methodology that you think could be followed in order to eventually identify or provide an opportunity to identify the members of the class. So my question is, did you go into that with the district court? Was there a presentation to the district court at any point of exactly how this would be accomplished, other than just a general reference to additional proceedings or a certain number of mini-trials? Well, we argued for a claims administration procedure in our briefs. But did you elaborate on the procedure? Can we find that in the record? I don't think you can find, for example, a claim form that we I'm not really talking about a claim form, but an elaboration on exactly what the procedure would be. Well, the plaintiff, the claimant would attest to having received the fax and having submitted to that number. Well, I know that's what you're telling us today, but did you present that to the district court? Can we find that in the record? And if it's not, isn't that a problem that the court was operating in a vacuum as far as in weighing and in considering this issue and how this determination would take place, that it was presented with nothing in any detail? We argued it in opposition to the motion to decertify. We did not do a detailed presentation of what process we were proposing. I can see that. All right, very well. We'll hear from you, Mr. Kelly. Thank you, Your Honor. May it please the court, my name is Don Kelly and I represent the Appley, in this case, Vein Centers of Excellence. It is not an abuse of discretion for a district court to follow the law of the circuit. And on that basis, we asked the court to affirm the decertification order below. And there are two main reasons why that that order was correct. One, factually, it aligns with Medtox and McKeague. And two, the substance and procedural facts of this case support what Judge Perry did here. And in this regard, following up on the questions of appellant counsel, this case comes before the court by way of a decertification order, not a refusal to certify. And the procedure now that is theoretically placed before this court was never proposed in detail to Judge Perry, which is further damning in view of the fact that the solution plaintiff is advocating in the abstract now, it indicted and damned previously in the case. And in this regard, the issue of claimant identification has been in this case a long time. And what's been happening is in that issue has been kicked down and kicked down the procedural path. Back in December of 2013, when Judge Perry certified the class, she acknowledged certain issues with identifying claimants that were brought to her attention. In this regard, 27% of the records in the sent list didn't show a current contact. An additional 30% showed that the name of the current holder of the contact was not the one on the send list for InfoUSA. Why is that relevant? Because two months later, defendant sought to follow up on this issue and proposed taking some limited depositions of the claimants to flesh this out, this specific issue here, receipt of the fact. We were thwarted with that. We were opposed successfully by plaintiff. Some of the points that were raised are salient here from the standpoint of ascertainability, commonality, predominance, and superiority. And I think it's important and helpful to the court to hear them. Counsel, on the initial two, commonality and predominance, and in particular commonality, the text of Rule 23, as it applies to commonality, talks about questions of law or fact common to class members and whether they predominate over any questions affecting only individual members. And so it seems to me that the predominance and the commonality inquiry go to those people who have already been deemed part of the class, not to the initial determination of whether or not, or not the initial determination of who is in the class. And I'm wondering if you can address, it seems that, you know, whatever the merits of what the district court did, it didn't really comply with the language of Rule 23. And what's your response to that? The response, Your Honor, is this. Again, this is the court looking back from a recertification perspective, not a refusal. And as has been pointed out, it's always in the district court's province to address issues of manageability and issues like that. And whether it turns to commonality and predominance, I don't think is a fatal issue at all. In fact, what highlighted in Judge Perry's ruling is there is no common evidence. That's the problem. There actually will have to be a hearing for everyone to determine whether they fit the claimant status in this case, whether you receive the facts. And now nine or 10 years after, as Judge Perry indicated, the many years that have elapsed. So I think her ruling stands both in that respect as well, from the standpoint that all of these cases tell us that the district court has the power to go back and re-examine the saliency of her certification order. And the discretion standard seems even higher for her in that regard. But there are common questions of fact. I mean, opposing counsel highlighted four of them. There's the question of, you know, did they attempt to send a fax? What was the content of that fax? And those seem to affect the class members, not the initial determination of who the class is. And so isn't that enough to get by at least commonality and predominance? I would say no. I would say it's the judge's discretion to determine what will predominate. And that's exactly what we have here. I mean, in every case, there's always going to be some level of redundancy amongst class members here. But it devolves to the district court to determine in her discretion or its discretion which issue is going to predominate and take her time. And in this case, that's a serious inquiry when you're talking about at least 10,000 people of 45,000 people who don't belong in the class. And MedTox explains specifically that you can't sue unless you're a claimant or receive the fax. So with regard to the... Well, let me ask you this. This is a question that was raised in the briefing. So this outcome really rewards the perpetrator, so to speak, who doesn't keep good records? It would reward that in that case. But in this case, the courts have cited that this is not a deterrence case because we never had the records. Never. That's not disputed. Westfax never gave them to us, Your Honor. In fact, my client never even heard of the TCPA until the lawsuit was filed. We've never had them. This is not... This does not fit those cases. And we pointed that out as well. This does not fit deterrence cases. Defendant did not destroy any records. They didn't make anything harder. In fact, the strange thing about this case is the plaintiff's firm has probably a better relationship with Westfax than any of the defendants. So no, there's no deterrence element in this case from that standpoint. Well, there may not be a deterrence to destroying the records, but there'd be a deterrent to requesting Westfax to do a massive junk facts operation for you. Correct. Well, that would assume my client knew there was something wrong with that, too. So unfortunately, I mean, they're defunct. Right. It'll deter your client from doing it again, and it would cause other people to learn the law. Conceivably, but again, Vein Centers is defunct, so at this point, I mean, the deterrence element is a practical consideration. So getting back to the issues, in this case, these factual issues, and whether or not... What's your view on whether this is properly considered under the superiority prong of the rule versus the predominance prong? I don't think it matters, Your Honor. I agree with the Sixth Circuit, and for these reasons. You mean you think we can affirm one way or the other, it doesn't matter under which prong. You don't think it, you don't think there's a correct way to do it? No, no. I think the deficits here in the facts, as the Circuit, I mean, the Circuit Court and the Sixth Circuit said, these problems wouldn't change our analysis whether they were done under superiority, predominance, or ascertainability. That's my... No, I understand that. I was just wondering if you had a view on what's the proper way to do it, because we have to write an opinion about it that'll set the law of the Circuit, potentially, taking into account the prior decisions, and taking as a given that you think you win under any approach, there still might be an approach that is the better way to do the law. Understood. But if you don't have a view on it, I will take your answer from before. Actually, I do have an objective view, apart from this case. I think it fits nicely under the ascertainability standard in this Circuit. I do. I don't, and that's the standard ascertainability standard, because it doesn't require any administrative feasibility of doing any burden of record searching. So, but in this case, again, I don't think it actually has to get there to determine whether that's a critical determination, because we have facts in this case which show that when it was requested to inquire of the same people we want to inquire now, the argument was made it would be unfounded speculation that class members would have relevant evidence as to receipt of a fax. But counsel, here's my problem with your argument. Whether or not there's objective criteria that allow you to figure out who's in the class, and the criteria here is objective. It's did you or did you not actually receive the facts? And I think your argument is that, well, you need objective evidence, not subjective evidence. But I don't think ascertainability talks at all about the subjectivity of the evidence. There's a difference between criteria and evidence. How would you resolve what I think is an extension of our case law if we were to go your route? You are correct, because ascertainability isn't even stated under Rule 23. Insofar as that, I mean, MedTox tells you that it's not appropriate to certify when there is objective evidence in there. What we have is, in terms of this, the question is, do we have objective evidence and something else? It's a balance of what the court's looking for in there. You can look at the CE Select case, where the court just said, look, we're not saying, because we haven't seen the records in this case, we can't make a determination. That's the determination, is what we have here sufficient to provide ascertainability. Why is it it's sufficient that we have objective criteria? That basically the identification of class is ascertainable, at least as a theoretical matter, because we have an objective criteria that provides due process concerns, reliability of the proceedings, and things of that nature. I mean, this is exactly what we're trying to fathom here. I mean, the idea that you can just simply leave it to class members eight, nine, ten years later to sit there and file an affidavit and say, I got the facts. Where does that lead us? Well, we're gonna sit there, you have to investigate it. Where's the criteria is a safeguard to prevent us from getting here. We don't, if you have a case, for example, to quote the Seventh Circuit, if you've got a $2 bottle of Wesson oil, only a lunatic would file an individual claim for that. Here, we've got a different situation. We've got a $500 recovery in here, so it provides the safeguards for the recovery. But by going beyond just objective criteria and requiring objective evidence, in other words, something objective to show that they're part of the class, aren't you really asking us to, in effect, adopt the Third Circuit's heightened standard for ascertainability? No, I'm not. I'm asking you to follow Medtox and McKee. Medtox specifically says the objective evidence are the facts law showing receipt. That's what Judge Perry keyed in on, that exact language. And that's from 996 of the Medtox case. That's what Medtox pointed out was the objective evidence, the evidence showing receipt of the facts in there. Now, in this case, you know, we've addressed the other issues with the facts, but as long as we could show who originally got the facts, that would be one step in the right direction. But right now, we're being asked to use affidavits and claims forms when those are damned and indicted four years ago as a reasonable method to try to do some discovery on receipt. Four years later, somehow all those issues with affidavits and inquiring the class have somehow resolved. I don't think that's a fair solution. Where did we find that language four years ago? Four years ago, Your Honor, in in the record, um, uh, the, uh, request plaintiffs sought to take discovery by way of deposition and were denied. Uh, that was Ed Mo 50. That was 50. And we referenced these in our questionnaire if depositions won't work. And when we were asked specifically, one of the, one of the 10 questions we asked, did the person filling the questionnaire recall receiving the facts? The argument was it's not relevant from the plaintiff and we were denied that opportunity. So now these same questions are somehow relevant. This same procedure is somehow curative. I don't believe that's a fair, a fair position to take in this case. And so it's our view that regardless of what we may think about, what are the proper confines parameters of ascertainability in this case, what we know from med talks and McKee and the facts in this case in the positions taken, Judge Perry's decision was not an abuse of discretion. So it's on those basis that we would request the court and ask the court respectfully to affirm her decision. Thank you. Thank you very much for your argument. Mr. Herrera, we'll hear from you in rebuttal. Thank you, your honor. The issue of doing discovery of class members, I have to point out that the, when we opposed that at the district court, what we were seeking to certify was a class of all persons sent the faxes, regardless of whether the transmissions were successful or not. There are a number of cases that go that way. After med talks, Sandusky versus med talks, we agreed that only the successful transmissions are actionable, that the attempted transmissions are not actionable. So the posture of what we were seeking in terms of class certification changed. I still don't think discovery of class members would be necessary. We know they are out there. We know the number of successful transmissions. We know the number of TCPA violations. So the issue is how do you distribute a recovery, assuming that we win, which we have not done, of course. But defense counsel talked about, well, an ascertainability in the circuit. Your honors asked him, what's the best way to decide this issue about class member identification? Counsel said, ascertainability, you have to make sure that there's a feasible mechanism  for what the ascertainability standard is. That standard was presented to this court in Sandusky versus med talks. It's a case I argued. At that time, the split was between the Sixth and Seventh Circuits, and Ricos in the Sixth Circuit, Mullins in the Seventh Circuit, and the Third Circuit's decision in Carrera is the name of the case. That imposed a heightened ascertainability requirement. And this court said, no, we are not going to adopt the heightened Third Circuit standard, because that's what the district court basically applied in that case. It required a method for identifying class members. And the med talks court reversed that, reversed that denial of class certification. So the one thing we can say for sure about the law in this circuit is that it does not follow the Third Circuit's heightened standard. Aside from that, McKeague, if you read it the way the defendants propose, it brings the Third Circuit standard back in, because it says class member identification requires a separate discussion of ascertainability. So in that circumstance, and we argue in our briefs, the earlier panel decision controls. And the Third Circuit's identification requirement is not part of this circuit's ascertainability law. At the very least, there's a, there's a serious conflict there. And the defendant's overall position seems to be, well, class certification should be denied. So it doesn't matter how you get there. And we are asking this court to look beyond this one TCPA case and recognize that district courts in the circuit need to know what standards to ascertainability. Should we follow Mullins and Briseño and, and analyze these concerns under a balancing test in 23B3 superiority, or is it a standalone requirement that the plaintiff has the burden of proving on its own? And even if the result turns out the same in this individual TCPA case, it's worth getting to the right, getting to the same answer the right way. So that in future cases, the district courts will know what to do and the practitioners, frankly, will know what they have to plead and what they have to prove. All right. Um, there is one issue about deterrence. There is general deterrence and specific deterrence. Of course, the defendant in this case says it's defunct. So presumably it won't be sending junk faxes in the future. Um, but there is general deterrence for other people, you know, who would consider fax advertising and junk faxing. Very well. Thank you for your argument, Mr. Hera. Thank you, Your Honors. We'd ask that the court, I'm sorry, the court vacate the decertification order. Understood. Case is submitted. The court will file an opinion in due course. Thank you all for your arguments.